O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DIANE A. H.,

              Plaintiff,

    v.

ANDREW M. SAUL, Commissioner
of Social Security,

              Defendant.

Case No. 5:20-CV-00168 KES

MEMORANDUM OPINION AND
ORDER

**I.**

**BACKGROUND**

Plaintiff Diane A. H. ("Plaintiff") attended college for two or three years and received a certificate to work as a dental assistant. Administrative Record ("AR") 41, 191. From 1988 until 2013, she worked as a hospital data coordinator collecting information about patient history and treatment from medical charts and inputting the data into a laptop computer. AR 44–45, 192. She stopped working in January 2013 when the hospital eliminated her position. AR 46, 191–92. As of October 2018, she could drive a car, maintain a routine for performing self-care, household chores, and meal preparation, do jigsaw puzzles, visit with friends, and shop. AR 42–44.

In March 2016, Plaintiff applied for Title II Social Security Disability Insurance Benefits ("DIB"), alleging that she became unable to work on January 1, 2014, due to various physical impairments and the mental impairments of depression and anxiety.  AR 19, 168–72, 190.  On October 29, 2018, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert ("VE").  AR 34–60.  On November 30, 2018, the ALJ issued an unfavorable decision.  AR 19–29.

The ALJ found that Plaintiff suffered from the severe, medically determinable impairments of fibromyalgia, degenerative joint/disc disease of the lumbar spine, and hepatitis.  AR 21.  The ALJ further found that Plaintiff's medically determinable mental impairment of depressive disorder was nonsevere, because it caused only mild limitations in the four relevant areas of mental functioning.  AR 22–23.

The ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work with the following additional restrictions: "[She] may not climb ladders, ropes or scaffolds and may perform all other postural activities on an occasional basis.  [She] must avoid concentrated exposure to temperature extremes, vibration and hazards, such as unprotected heights and dangerous machinery."  AR 24.  Based on the RFC analysis and the VE's testimony, the ALJ found that Plaintiff could do her past relevant work as a medical records data clerk, Dictionary of Occupational Titles ("DOT") 245.362-010.[1]  AR 28–29.  The ALJ concluded that Plaintiff was not disabled from January 1, 2014, through the date of his decision.  AR 29.

---

[1] The ALJ's decision inadvertently labels the medical records data clerk as DOT 243.362-010.  Compare AR 28, with id. 56, 74–75, 91–92.

## II.

## ISSUES PRESENTED

Issue One:  Whether the ALJ's step-two finding that Plaintiff suffered from no severe mental impairment is supported by substantial evidence?

Issue Two:  Whether the ALJ "erred by failing to include the mild mental limitations in determining the RFC."

(Dkt. 24, Joint Stipulation ["JS"] at 4.)

## III.

## SUMMARY OF THE MENTAL IMPAIRMENT EVIDENCE

In December 2014 through April 2016, mental status examinations by Plaintiff's primary care physicians were unremarkable.  They invariably found her to be alert, cooperative, and fully oriented, with normal speech and cognitive function.  AR 262, 268, 271, 283, 298, 364.  On examination, anxiety and depression symptoms were not present and she showed no signs of memory loss. AR 271, 274, 286, 289, 291, 297, 363.

In October 2015, Plaintiff was referred to the Arthritis Medical Clinic for a rheumatology evaluation.  AR 306.  Plaintiff complained of depression, stress, anxiety, memory loss, and difficulty with concentration related to her fibromyalgia. AR 306, 309.  However, on examination, she was alert and fully oriented, with appropriate affect and demeanor, intact memory, and good insight and judgment. AR 307.  Plaintiff was assessed with fibromyalgia and osteoarthritis.  AR 307. While Plaintiff continued to complain of depression and anxiety related to her fibromyalgia from January through June 2016, mental status examination found her alert and oriented, with appropriate affect and demeanor, intact recent and remote memory, and good insight and judgment.  AR 327, 337–38, 340.  In August, September, and October 2016, neurological examinations were unremarkable.  AR 360, 371, 375.  Plaintiff was neither diagnosed with depression or anxiety nor referred for psychiatric treatment.

3

1    In August 2015, Anthony Benigno, Psy.D., a clinical psychologist, conducted

2    a complete psychological evaluation at the request of the Commissioner.  AR 353–

3    58.  Dr. Benigno reviewed the available medical records, obtained historical

4    information from Plaintiff, conducted a mental status examination, and performed a

5    battery of tests.  AR 353.  Plaintiff, who arrived early and alone for her

6    appointment, reported that she has had anxiety since 2006 and depression since

7    2011 but denied seeking or receiving any treatment aside from taking Cymbalta.[2]

8    AR 353, 357.  During a typical day, Plaintiff watched television, gardened, and

9    read.  At 354.  She acknowledged being able to independently dress, bathe,

10   complete household chores, pay bills, use a telephone, shop, do laundry, make

11   meals, drive, and manage her own funds.  AR 354.  Plaintiff reported socializing

12   with neighbors and friends but did not get along well with her family.  AR 354.

13   On examination, Plaintiff was alert, attentive, and cooperative.  AR 355.  She

14   "demonstrate[d a] willingness to complete tasks and appeared to be putting forth

15   [her] best effort."  AR 355.  Plaintiff was oriented to person, but not to time, place,

16   and purpose of examination.  AR 355.   Her thoughts were coherent and logical,

17   with appropriate content.  AR 355.  Dr. Benigno found that Plaintiff's current

18   intellectual functioning was in "the borderline range."  AR 355.  Plaintiff's mood

19   was dysthymic/anxious with restricted range of affect.  AR 355.  Her immediate,

20   recent, and remote memory were intact.  AR 355.  She demonstrated an adequate

21   attention span and was able to sustain concentration and work without distraction.

22   AR 355.  While Dr. Benigno found that Plaintiff's insight into her illness was poor,

23   her fund of knowledge and judgment for commonsense hypothetical events were

24   adequate.  AR 355.

---

[2] Cymbalta (duloxetine) is an antidepressant that is used to treat both major
depressive disorder and general anxiety disorder.  <www.drugs.com> (last visited
Nov. 25, 2020).

As for the test results, Plaintiff was in the "severely impaired range" on the Trail Making Test, Parts A and B.[3]  AR 355–56.  On the Wechsler Adult Intelligence Scale, Plaintiff's general intellectual functioning was in the "borderline range."  AR 356.  On the Wide Range Achievement Test, no indications of a learning disability were found.  AR 356.  Dr. Benigno diagnosed "probable" anxiety disorder, depressive disorder, and borderline intellectual functioning, and assessed a Global Assessment of Functioning ("GAF") score of 75.[4]  He opined that Plaintiff would have *no difficulty* understanding, remembering, and carrying out short, simplistic instructions or managing her own finances.  AR 357.  He further opined that Plaintiff would have *mild difficulty* understanding, remembering, and carrying out detailed and complex instructions; making simplistic work-related decisions without special supervision; responding to change in a workplace setting; maintaining persistence and pace in a normal workplace setting; or interacting with

---

[3] "The Trail Making Test is a neuropsychological test of visual attention and task switching.  It consists of two parts in which the subject is instructed to connect a set of 25 dots as quickly as possible while still maintaining accuracy.  The test can provide information about visual search speed, scanning, speed of processing, mental flexibility, as well as executive functioning.  It is sensitive to detecting cognitive impairment associated with dementia, for example, Alzheimer's disease." <https://en.wikipedia.org/wiki/Trail_Making_Test> (last visited Nov. 25, 2020) (footnote omitted).

[4] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).  The GAF includes a scale ranging from 0–100 and indicates a "clinician's judgment of the individual's overall level of functioning."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (hereinafter DSM–IV).  According to DSM–IV, a GAF score of 71–80 suggests that if symptoms are present, they are "transient and expectable reactions to psychosocial stressors" and cause "no more than slight impairment in social, occupational or school functioning."  Id. 34.  "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement."  Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

appropriately with supervisors, coworkers, and peers on a consistent basis.  AR 357.  Finally, Dr. Benigno opined that Plaintiff would have *moderate difficulty* complying with job rules such as safety and attendance.  AR 357.

In September 2016, Harvey Bilik, Psy.D., a state agency consultant, reviewed the medical record and concluded that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace.  AR 68–69.  Dr. Bilik opined that "[Plaintiff] can understand and remember simple and detailed—but perhaps not complex—instructions.  [She] can carry out simple and detailed—but perhaps not complex—instructions over the course of a normal workweek.  [Plaintiff] can interact appropriately with others.  [She] can adapt despite any limitations in this domain."  AR 74.

From October 2016 through July 2018, mental status examinations were normal—Plaintiff was alert, cooperative, and fully oriented with an appropriate affect and intact memory.  AR 417, 420, 423, 427, 428, 430, 432, 436, 439, 442, 444, 498.  In November 2016, January 2017, and July 2017, Plaintiff exhibited no signs of depression or anxiety.  AR 436, 439, 446, 497.  In March 2017, Plaintiff's certified nurse practitioner did not assess any mental impairments related to Plaintiff's fibromyalgia.  AR 362, 505.

In December 2016, R. Waranch, Ph.D., a state agency consultant, reviewed the medical record and concluded that Plaintiff had a mild restriction of activities of daily living but moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace.  AR 85.  Dr. Waranch opined that:

> [Plaintiff] is capable of understanding, remembering and carrying out
> short, simplistic instructions but would have difficulty with more
> detailed and complex instructions.  [She] would be able to interact
> with the public, supervisors and coworkers if contacts were
> intermittent and not prolonged.  [Plaintiff] would be capable of

1    completing a workday/workweek without interruption and working at

2    a consistent pace.  [She] is capable of adapting to changes and

3    pressures in the workplace related to performing simple tasks.

4    AR 91.

5                                 **IV.**

6                           **DISCUSSION**

7    **A.    Plaintiff Did Not Have a Severe Mental Impairment.**

8         Plaintiff contends that the ALJ erred at step two in failing to find that her

9    mental impairment was severe.  (JS at 4–14, 19.)  By its own terms, the evaluation

10   at step two is a de minimis test intended to weed out the most minor of

11   impairments.  See Bowen v. Yuckert, 482 U.S. 137, 153–54 (1987) (O'Connor, J.,

12   concurring); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) ("We have

13   defined the step-two inquiry as a de minimis screening device to dispose of

14   groundless claims.").  An impairment is not severe only if the evidence establishes

15   a slight abnormality that has only a minimal effect on an individual's ability to

16   work.  Smolen, 80 F.3d at 1290; see 20 C.F.R. § 404.1520a(d)(1) ("If we rate the

17   degrees of your limitation as 'none' or 'mild,' we will generally conclude that your

18   impairment(s) is not severe, unless the evidence otherwise indicates that there is

19   more than a minimal limitation in your ability to do basic work activities.")

20        The ALJ's step-two finding of no severe mental impairment was supported

21   by substantial evidence.  The ALJ acknowledged that Plaintiff's depressive disorder

22   was a medically determinable impairment.  AR 22.  Nevertheless, the ALJ found

23   that *at most* Plaintiff had only a mild limitation in understanding, remembering, and

24   applying information, and in concentrating, persisting, and maintaining pace.  AR

25   22.  While Plaintiff endorsed memory loss, brain fog, and difficulty with

26   concentration, neurological examinations by Plaintiff's treating physicians found *no*

27

28

abnormalities.[5]  AR 22 (citing AR 360, 363, 442, 444).  While Dr. Benigno found deficits in Plaintiff completing the Trail Making Test, her immediate, recent, and remote memories were intact, and Dr. Benigno concluded that Plaintiff had adequate memory, fund of knowledge, attention, and concentration.  AR 22, 355–56.  The ALJ next found that *at most* Plaintiff had only a mild limitation in interacting with others.  AR 22.  Plaintiff did not allege any problems with getting along with others, and at her medical appointments, and the consultative examination, her doctors routinely assessed Plaintiff as "cooperative."  AR 22 (citing AR 268, 271, 283, 355, 417, 423, 430, 432).  Finally, the ALJ found that *at most* Plaintiff had mild limitation in adapting or managing herself.  AR 22.  Therefore, the ALJ concluded that Plaintiff's mental impairment was nonsevere.  AR 23.

Plaintiff failed to demonstrate that her depression or anxiety caused more than minimal limitations on her ability to perform basic mental work activities.  Plaintiff does not identify—and this Court cannot locate—*any* evidence from her treating physicians that contradicts the ALJ's findings.  Instead, Plaintiff contends that the ALJ should have adopted Dr. Benigno's opinion that Plaintiff had moderate difficulty in complying with work rules such as safety and attendance.  (JS at 12–13.)  The ALJ gave Dr. Benigno's opinion "significant weight" but rejected this one moderate limitation because Dr. Benigno did not explain why Plaintiff would have difficulties in this one area and "finding no evidence of [Plaintiff's] failing to meet medical, social or other obligations on the record."[6]  AR 23.  Plaintiff argues that it

---

[5] The ALJ partially rejected Plaintiff's subjective symptom statements, finding her reported pain levels and alleged functional limitations inconsistent with the medical evidence, the clinical findings, and Plaintiff's "retained independence and robust activities of daily living."  AR 25–26, 28.  Plaintiff does not contest the ALJ's partial rejection of her subjective statements.

[6] For claims filed before March 27, 2017, such as Plaintiff's, the ALJ must explain the weight given to medical source opinions.  20 C.F.R. § 404.1527(c).

"appear[s] that [ ] Dr. Benigno's opinion was based in part on the Trail Making Test." (JS at 12.) However, there is nothing in Dr. Benigno's opinion to support Plaintiff's mere speculation. Indeed, Dr. Benigno emphasized that Plaintiff drove herself and arrived alone and early to the examination. AR 353, 357. Plaintiff does not identify what aspects of the Trail Making Test implicate either safety or attendance. Further, as the ALJ noted, Dr. Benigno's moderate limitation assessment in this one area was inconsistent with assigning Plaintiff a GAF score of 75, which suggests that if symptoms are present, they are "transient and expectable reactions to psychosocial stressors" and cause "no more than slight impairment in social, occupational or school functioning." DSM-IV 34; see AR 22–23; see also Schamel v. Astrue, No. 4:09CV1729, 2011 WL 864975, at *15, 2011 U.S. Dist. LEXIS 24418, at *42 (E.D. Mo. Mar. 10, 2011) (finding that a GAF score of 80 "reflects transient, non-severe symptoms").

Plaintiff also asserts that because the ALJ gave "some weight" to Dr. Bilik's opinion, the ALJ should have adopted Dr. Bilik's multiple moderate limitations which "represents a severe impairment." (JS at 9.) In Dr. Bilik's mental RFC assessment, he found that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. AR 72–73. But the ALJ merely gave "some weight to the assessment by Dr. Bilik . . . that [Plaintiff's] depression and anxiety disorders were non-severe." AR 23; see AR 68 (Dr. Bilik finding that Plaintiff had only mild restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace).

1       The weight to be afforded the opinions of nontreating physicians, such as Dr.

2  Bilik, "depends 'on the degree to which they provide supporting explanations for

3  their opinions.'" <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1201 (9th Cir.

4  2008) (quoting 20 C.F.R. § 404.1527(d)(3)); <u>see</u> <u>also</u> <u>Holohan v. Massanari</u>, 246

5  F.3d 1195, 1202 (9th Cir. 2001) ("Generally, a treating physician's opinion carries

6  more weight than an examining physician's, and an examining physician's opinion

7  carries more weight than a reviewing [(nonexamining)] physician's."); <u>accord</u>

8  <u>Garrison v. Colvin</u>, 759 F.3d 995, 1012 (9th Cir. 2014).  Here, the *only* evidence of

9  *any* mental limitations was from Dr. Benigno's consultative examination.[7]  As

10 discussed above, the ALJ supported his decision giving Dr. Benigno's opinion

11 significant weight with substantial evidence.  "[T]he ALJ is the final arbiter with

12 respect to resolving ambiguities in the medical evidence." <u>Tommasetti v. Astrue</u>,

13 533 F.3d 1035, 1041 (9th Cir. 2008).  On this record, the ALJ reasonably rejected

14 Dr. Bilik's opinion to the extent that it indicated any moderate functional

15 limitations.

16      Even if the ALJ should have adopted Dr. Bilik's opinion as the proper

17 interpretation of Dr. Benigno's examination, the error was harmless.  <u>See</u> <u>Burch v.</u>

18 <u>Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be

19 reversed for errors that are harmless.").  Plaintiff argues that Dr. Bilik's opinion that

20 Plaintiff suffers from moderate limitations in performing complex tasks precludes

21 her from doing any work that requires reasoning level 4, including her past relevant

22 work.  (JS at 10.)  The DOT addresses a job's level of simplicity by assigning a

23 general educational development ("GED") rating for reasoning development.  The

24 ───────────────

25      [7] Dr. Bilik cited two examinations by Plaintiff's treating rheumatologist as
   evidence of "active depression, stress/anxiety, mood swing."  AR 67.  However,
26 these assessments were subjective symptom statements made by Plaintiff, and in a
   psychiatric examination done on the same date, the rheumatologist found Plaintiff
27 alert and oriented, with appropriate affect and demeanor, intact recent and remote
   memory, and good judgment and insight.  AR 322, 337–38.
28

DOT's GED reasoning scale ranges from level 1 (lowest) to level 6 (highest). Reasoning level 4 requires workers to "apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists; interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form."  DOT Appendix C.  Examples of rational systems include "bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation."  Id.  Other jobs that require reasoning level 4 include real estate agent (DOT 250.357-018), billing clerk (DOT 214.362-042), inspector (DOT 806.264-014), residential manager (DOT 186.167-018), and wedding consultant (DOT 299.357-018).[8]

Dr. Bilik did not use the DOT's GED reasoning levels to define Plaintiff's functional limitations, but he did distinguish between simple, detailed, and complex tasks.  AR 74.  He found that Plaintiff could do "simple and detailed" tasks but "perhaps not" complex tasks.  AR 74; cf. AR 357 (Dr. Benigno opining that Plaintiff would have only mild difficulty with both detailed *and* complex instructions).  The ALJ could reasonably interpret Dr. Bilik's opinion as referring to jobs with reasoning levels 1 or 2 as "simple," jobs with reasoning levels 3 or 4 as "detailed," and jobs with reasoning levels 5 or 6 as "complex."  The DOT does not use the work "complex" to describe level 4 reasoning.  Level 4 reasoning involves

---

[8] In contrast, reasoning level 3 is defined as the ability to follow written, oral, or diagrammatic instructions and to deal with problems involving several variables from a standardized situation.  DOT Appendix C.  Driving jobs often require reasoning level 3.  See, e.g., sales route driver (DOT 292.353-010), taxi driver (DOT 913.463-018), light truck driver (DOT 906.683-022), and heavy truck driver (DOT 905.663-014).  Reasoning level 5 requires workers to "[a]pply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions.  Interpret an extensive variety of technical instructions in mathematical or diagrammatic form.  Deal with several abstract and concrete variables."  DOT Appendix C.  Jobs requiring reasoning level 5 include loan officer (DOT 186.267-018), land agent (DOT 186.117-058), and director of rehabilitation services (DOT 076.117-010).

11

1  concrete rather than abstract variables with some standardization, albeit limited.

2  This kind of reasoning should not be described with the highest available

3  descriptor, i.e., "complex." Thus, even fully crediting Dr. Bilik's opinions would

4  not establish that Plaintiff could not do work that requires level 4 reasoning.

5  Indeed, upon initial review, the Commissioner concluded that Dr. Bilik's mental

6  functional assessment would not preclude Plaintiff from performing her past

7  relevant work. AR 66, 75; see AR 104 ("Although you have been experiencing

8  some anxiety and depression, there are no indications that this imposes major

9  limitations upon your ability to think, communicate, and follow basic instructions

10 or to function adequately in your usual activities. … [T]hese limitations do not

11 prevent you from performing work you have done in the past ….").

12        Plaintiff further argues that Dr. Waranch's opinion "confirms the presence of

13 a severe mental impairment." (JS at 13.) Dr. Waranch opined that Plaintiff

14 suffered from multiple moderate impairments and could not perform detailed or

15 complex tasks. AR 89–91. The ALJ gave Dr. Waranch's opinion "little weight,"

16 finding that it was "based, at least in part, on his finding that [Plaintiff] suffered

17 from a neurocognitive disorder, that [Plaintiff] neither alleged, nor that was

18 diagnosed by any of [Plaintiff's] treating physicians or the psychological

19 consultative examiner, after administering a barrage of psychometric assessments."

20 AR 23; see AR 84 (Dr. Wallach stating that Plaintiff has a "Neurocog dis"). As the

21 ALJ noted, not only is there no such diagnosis by any of Plaintiff's treating

22 physicians, but the consultative examiner's interpretation of his own testing is

23 deserving of significant weight. AR 23. Indeed, Dr. Benigno's "opinion alone

24 constitutes substantial evidence, because it rests on his own independent

25 examination of [Plaintiff]." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.

26 2001); see Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) ("Reports of

27 consultative physicians called in by the Commissioner may serve as substantial

28 evidence.") (citation omitted); cf. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)

1  (ALJ errs in relying on examining physician who does not conduct his own

2  examination but instead relies "on the same clinical findings as a treating

3  physician[ ] but differs only in his or her conclusions").

4  **B.    Plaintiff's Mild Mental Limitations Did Not Limit Her Ability To Work.**

5          Plaintiff contends that even assuming her mental limitations were only mild,

6  they should have been included in the RFC.  (JS at 20–23, 25–26.)  In assessing a

7  claimant's RFC, an ALJ must consider the combined effect of all of the claimant's

8  medically determinable physical and mental impairments, whether severe or

9  nonsevere.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); see SSR 96-8p, at *5 ("In

10  assessing RFC, the adjudicator must consider limitations and restrictions imposed

11  by all of an individual's impairments, even those that are not 'severe.'"); accord AR

12  20 (ALJ noting that in making his RFC finding, he "must consider all of

13  [Plaintiff's] impairments, including impairments that are not severe").  "The RFC

14  therefore *should* be exactly the same regardless of whether certain impairments are

15  considered 'severe' or not."  Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir.

16  2017).

17          Here, the ALJ considered Plaintiff's depression, which the ALJ found to be a

18  medically determinable mental impairment, in assessing her RFC.  He

19  acknowledged that Plaintiff testified to brain fog, problems concentrating, fatigue,

20  and lethargy.  AR 25, 27.  Nevertheless, the ALJ emphasized that Plaintiff's

21  physicians reported she was alert and understood her various diagnoses, regularly

22  presented in "no acute distress," and readily communicated her symptoms.  The

23  ALJ also noted that medical records indicated Plaintiff had a "high level of

24  functioning," drove herself to medical appointments and social visits, and managed

25  self-care tasks and household and outside chores without assistance.  AR 25.  As

26  discussed above, Plaintiff has not identified any evidence from her treating sources

27  that implicated her ability to perform basic mental work activities.  "The mere

28  existence of an impairment is insufficient proof of a disability."  Matthews v.

1   *Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); see Key v. Heckler, 754 F.2d 1545, 1549

2   (9th Cir. 1985) ("The mere diagnosis of an impairment … is not sufficient to

3   sustain a finding of disability."); accord Lundell v. Colvin, 553 F. App'x 681, 684

4   (9th Cir. 2014).  Here, Plaintiff has failed to demonstrate what functional

5   limitations resulted from her mental impairment.  See Valentine v. Comm'r Soc.

6   Sec. Admin., 574 F.3d 685, 692 n.2 (9th Cir. 2009) (because the claimant "[did] not

7   detail what other physical limitations follow from the evidence of his knee and

8   should injuries, besides the limitations already listed in the RFC," the court

9   "reject[ed] any invitation to find that the ALJ failed to account for [the claimant's]

10  injuries in some unspecified way").  In sum, the ALJ provided substantial evidence

11  for determining that Plaintiff's medically determinable mental impairment did not

12  restrict her RFC.

**V.**

**CONCLUSION**

15       For the reasons stated above, IT IS ORDERED that judgment shall be

16  entered AFFIRMING the decision of the Commissioner.

DATED:  December 1, 2020          _____

                                  KAREN E. SCOTT
                                  United States Magistrate Judge